IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUNTECK/TTS INTEGRATION LLC, | § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:23-cv-282-K |
| SUNTECK TRANSPORTATION INC, | § § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Sunteck/TTS Integration LLC ("Sunteck TTS") has filed a motion for default judgment against Defendant Sunteck Transportation Inc ("Sunset Transportation"). *See* Dkt. No. 12.

United States District Judge Ed Kinkeade has referred this motion to the undersigned magistrate judge. *See* Dkt. No. 14.

The undersigned now enters the following findings of fact, conclusions of law, and recommendation that the Court grant in part and deny in part the motion for a default judgment against Sunteck Transportation.

**Background**

This case concerns alleged violations of the Lanham Act as to Sunteck TTS's trademarks. *See* Dkt. No. 8 at 1. Sunteck TTS is a transportation and logistics company. *See id.* at 3. Sunteck TTS alleges that it owns the trademarks SUNTECK and SUNTECK TTS, registered to the United States Patent & Trademark Office

under Reg. No. 5780731. *See id.* Sunteck TTS contends that it has used the mark since 2017, investing time and resources and engendering goodwill in its mark. *See id.* Sunteck TTS alleges that Sunteck Transportation was formed in 2022 and provides similar transportation logistic services. *See id.* Sunteck TTS states that Sunteck Transportation is not authorized to use Sunteck TTS's mark. *See id.*

Sunteck TTS alleges that it was contacted by one of Sunteck Transportation's customers, confusing the companies' communication. *See id.* at 3-4. Sunteck TTS states that it has contacted Sunteck Transportation regarding its use of the mark but that Sunteck Transportation did not stop using the mark. *See id.* at 1.

Sunteck TTS filed a complaint on February 8, 2023. *See* Dkt. No. 1. Sunteck TTS issued summons and served Sunteck Transportation. *See* Dkt. No 4; Dkt. No. 7. But Sunteck Transportation did not appear in the case.

Sunteck TTS then filed an amended complaint on March 7, 2023. *See* Dkt. No. 8. The amended complaint alleges federal trademark infringement, injury to business reputation or trademark under Texas law, common law trademark infringement, common law unfair competition. *See id.* at 4-6. Sunteck TTS reissued summons, and summons was returned executed. *See* Dkt. No. 10; Dkt. No. 11. And Sunteck Transportation again did not respond.

Sunteck TTS then filed a combined request for clerk's entry of default and motion for default judgment against Sunteck Transportation. *See* Dkt. No. 12. And the Clerk of the Court entered a default as to Sunteck Transportation. *See* Dkt. No. 13.

## Legal Standard

Federal Rule of Civil Procedure 55(b)(2) governs applications to the Court for default judgment. *See* FED. R. CIV. P. 55(b)(2).

A plaintiff seeking a default judgment must establish: (1) that the defendant has been served with the summons and complaint and that default was entered for its failure to appear; (2) that the defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013).

The plaintiff must also make a *prima facie* showing there is "jurisdiction both over the subject matter and the parties." *Sys. Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 324 (5th Cir. 2001).

In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *See New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time required by the Federal Rules of Civil Procedure. *See id.* The clerk will enter default when default is established by an affidavit or otherwise. *See id.* After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on such default. *See id.*

The Fifth Circuit favors resolving cases on their merits and generally disfavors default judgments. *See Rogers v. Hartford Life & Accident Ins. Co.,* 167 F.3d 933, 936 (5th Cir. 1999); *see also Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989) ("Default judgments are a drastic remedy, not favored by the federal rules and resorted to by the courts only in extreme situations."). But this policy is "counterbalanced by considerations of social goals, justice, and expediency, a weighing process [that] lies largely within the domain of the trial judge's discretion." *Rogers,* 167 F.3d at 936 (quoting *Pelican Prod. Corp. v. Marino,* 893 F.2d 1143, 1146 (10th Cir. 1990) (internal quotations omitted)); *see also Merrill Lynch Mortg. Corp. v. Narayan,* 908 F.2d 246, 253 (7th Cir. 1990) (noting that default judgments allow courts to manage their dockets "efficiently and effectively").

Before entering a default judgment, a court should consider any relevant factors. Those factors may include "(1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion." *Arch*, 2013 WL 145502, at *3 (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). The Court should also consider whether the defendant has a meritorious defense to the complaint. *See id.*

-4-

An entry of default "does not establish the amount of damages. After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States of Am. for Use of M-Co Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (cleaned up); *cf. Jackson v. FIE Corp.*, 302 F.3d 515, 524-31 (5th Cir. 2002) (holding that jurisdictional allegations and findings supporting a default judgment are not entitled to preclusive effect in the personal-jurisdiction context of Federal Rule of Civil Procedure 60(b)(4)). A court may enter default judgment against a party and determine damages without the benefit of an evidentiary hearing "where the amount claimed is a liquidated sum or one capable of mathematical calculation." *Leedo Cabinetry v. James Sales & Distrib., Inc.*, 157 F.3d 410, 414 (5th Cir. 1998) (cleaned up).

### Analysis

I.    <u>The Court has subject matter jurisdiction and personal jurisdiction.</u>

Sunteck TTS has shown the Court has subject matter jurisdiction.

The Court has jurisdiction under 28 U.S.C. § 1331 because this is a "civil action[] arising under the … laws … of the United States." 28 U.S.C. § 1331. Sunteck TTS alleges federal trademark infringement under the Lanham Act, a federal law. *See* Dkt. No. 8 at 4.

Sunteck TTS also brings claims for trademark infringement and unfair competition under Texas common law and injury to business reputation or trademark under Section 16.103 of the Texas Business and Commerce Code. *See id.* at 5. The Court should exercise supplemental jurisdiction over the Texas law claims as they

are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); *see* Dkt. No. 8 at 2.

"A judgment without personal jurisdiction is void," and a "district court has the duty to ensure it has the power to enter a valid default judgment." *Sys. Pipe & Supply*, 242 F.3d at 324. In assessing personal jurisdiction, "the Texas long-arm statute extends to the limits of federal due process." *Bulkley & Associates, L.L.C. v. Dep't of Indus. Relations, Div. of Occupational Safety & Health of the State of California*, 1 F.4th 346, 351 (5th Cir. 2021). Federal due process requires that "the suit aris[es] out of or relate[s] to the defendant[s'] contacts with" Texas. *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). "The due process component of personal jurisdiction requires two elements: (1) the nonresident must have some minimum contact with the forum such that… he or she could anticipate being haled into the courts of the forum state, and (2) it must be fair or reasonable to require the nonresident to defend the suit in the forum state." *Cont'l Mach. Co., Inc. v. Korn*, No. 3:19-cv-769-L, 2020 WL 521092, at *3 (N.D. Tex. Jan. 16, 2020).

Sunteck TTS alleges that Sunteck Transportation has "sufficient minimum contacts with the State of Texas" because, "[u]pon information and belief, Defendant transacts business within the State of Texas and in this District using Plaintiff's Marks, and knew that the injury from its unlawful conduct would be felt primarily by Plaintiff in this District. Further, Defendant directs advertisements for Defendant's transportation logistics services to customers or potential customers in

this District using Plaintiff's Marks." Dkt. No. 8 at 2. As Sunteck TTS has alleged that Sunteck Transportation has minimum contacts with Texas so that it would expect to be haled into court in Texas, the Court has personal jurisdiction over Sunteck Transportation.

II.    The procedural requirements for default judgment have been met.

Sunteck TTS has satisfied the prerequires for entry of default judgment against Sunteck Transportation:

- Summons was reissued to Sunteck Transportation on June 20, 2023. *See* Dkt. No. 10.

- Sunteck Transportation was served through its registered agent Keith Baldwin on June 26, 2023. *See* Dkt. No. 11.

- Sunteck TTS filed a motion for final default judgment and requested the Clerk of Court enter default against Sunteck Transportation on August 16, 2023. *See* Dkt. No. 12.

- The Clerk of Court entered default judgment against Sunteck TTS on August 17, 2023. *See* Dkt. No. 13.

- Sunteck Transportation failed to file a motion or responsive pleading or to otherwise appear in the litigation.

- Because Sunteck Transportation is not a natural person, it cannot be a minor, incompetent person, or person in military service. *See Arch*, 2013 WL 145502, at *3.

And Rule 55(b)(2) requires that a party have written notice of the application if it has appeared in the case. *See* FED. R. CIV. P. 55(b)(2). Because Sunteck Transportation has not appeared in the case, notice is not required.

III.  Sunteck TTS's pleadings support default judgment against Sunteck Transportation Inc on all claims but its "Injury to Business Reputation or Trademark Under Texas Law" claim.

The Court takes as true the facts asserted by a plaintiff against a defaulting defendant. *See Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022). The defendant, by its default, admits the plaintiff's well-pleaded allegations of fact. *See id.*

When determining whether the requested default is "'supported by well-pleaded allegations' and has 'a sufficient basis in the pleadings,'" the Fifth Circuit "draw[s] meaning from the case law on Rule 8, which sets forth the standards governing the sufficiency of a complaint." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 505 F.2d 1200, 1206 (5th Cir. 1975)).

"Rule 8(a)(2) requires a pleading to contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. (8)(a)(2)). "The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds on which it rests." *Id.* Ultimately, "[t]he factual allegations in the complaint need only 'be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up)). The pleading must contain "more than an unadorned, the-

defendant-unlawfully-harmed-me accusation" but have "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 638 (2009) (quoting *Twombly*, 550 U.S. at 547).

Sunteck TTS brings claims for federal trademark infringement, and injury to business reputation or trademark, common law trademark infringement, and common law unfair competition under Texas law. *See* Dkt. No. 8 at 4-5.

The undersigned will address each claim in turn.

A. Federal Trademark Infringement and Common Law Trademark Infringement

To show trademark infringement under the Lanham Act, the plaintiff must provide evidence that there is "ownership in a legally protectible mark, and… must show infringement by demonstrating a likelihood of confusion." *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008).

Sunteck TTS has alleged ownership in a legally protectable mark. Sunteck TTS provides the federal registration information for its trademark, "SUNTECKTTS", under Reg. No. 5780731. *See Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010) ("Registration of a mark with the PTO constitutes prima facie evidence of the mark's validity and the registrant's exclusive right to use the registered mark in commerce with respect to the specified goods or services.").

The trademark "SUNTECK" is not registered under the registration number provided, nor does it appear in a search of the United States Patent and Trademark Office's database. But "[o]wnership of trademarks is established by use, not by

registration." *Union Nat. Bank of Texas, Laredo, Tex. v. Union Nat. Bank of Texas, Austin, Tex.*, 909 F.2d 839, 842 (5th Cir. 1990) (citations omitted).

"The first one to use a mark is generally held to be the 'senior' user and is entitled to enjoin other 'junior' users from using the mark, or one that is deceptively similar to it, subject to limits imposed by the senior user's market and natural area of expansion." *Id.*

And Sunteck TTS alleges that it owns the "SUNTECK" trademark and has "continuously and exclusively used Plaintiff's marks to indicate the source of Plaintiff's transportation logistics services" since 2017, which is before it alleges that Sunteck Transportation started using the mark. *See* Dkt. No. 8 at 3. This weighs in favor of Sunteck TTS's having ownership in the SUNTECK mark.

The Court must also determine if the mark is legally protectable.

A mark is protectable if it is either (1) inherently distinctive, or (2) has become distinctive through a secondary meaning. Marks are assigned to "categories of generally increasing distinctiveness": (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful. "A generic term connotes the basic nature of articles or services rather than the more individualized characteristics of a particular product." … Suggestive, arbitrary, and fanciful marks, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection," while "[g]eneric terms receive no trademark protection, [and] descriptive terms merit protection only if they have secondary meaning."

*Hassell Free Plumbing, LLC v. Wheeler*, No. 3:20-cv-1712-K, 2021 WL 1139424, at *4 (N.D. Tex. Mar. 25, 2021) (internal citations omitted).

To determine the level of distinctiveness of a mark, the United States Court of Appeals for the Fifth Circuit sometimes uses the "'imagination test,' which 'seeks to measure the relationship between the actual words of the mark and the product to

which they are applied.'" *Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 452 (5th Cir. 2017) (internal citations omitted). "'If a word requires imagination to apply it to the product or service in question, it tends to show that the term as used is suggestive. On the other hand, if the word conveys information about the product, it is descriptive.'" *Id.* (internal citations omitted).

As neither Sunteck TTS or Sunteck Transportation convey information about transportation services, the mark is at least suggestive and, so, legally protectable.

Sunteck TTS must also show infringement by demonstrating a likelihood of confusion. When determining likelihood of confusion, the Fifth Circuit looks to a list of non-exhaustive factors:

> (1) strength of the plaintiff's mark; (2) similarity of design between the marks; (3) similarity of the products; (4) identity of retail outlets and purchasers; (5) similarity of advertising media used; (6) the defendants' intent; (7) actual confusion; and (8) degree of ca[r]e exercised by potential purchasers. *American Rice Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir.2008) (citing *Oreck Corp. v. U.S. Floor Systems, Inc.*, 803 F.2d 166, 170 (5th Cir.1986); *Sun–Fun Products v. Suntan Research & Dev.*, 656 F.2d 186, 189 (5th Cir.1981)) (cleaned up).

*RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 697 (S.D. Tex. 2009).

In assessing likelihood of confusion, "no one factor is dispositive, and a finding of a likelihood of confusion does not even require a positive finding on a majority of these 'digits of confusion.'" *Elvis Presley Enterprises, Inc. v. Capece*, 141 F.3d 188, 194 (5th Cir. 1998) (citation omitted). When the infringing marks are identical to the plaintiff's trademark, an analysis of all factors is not necessary. *See Petro Franchise Sys., LLC v. All Am. Properties, Inc.*, 607 F. Supp. 2d 781, 788 (W.D. Tex. 2009). But

because Sunteck TTS's and Sunteck Transportation's marks are not identical, the undersigned will assess all factors.

> 1) Strength of the mark

> A trademark's strength is determined by the classification of the mark and the degree to which it is recognized in the marketplace. *Am. Rice*, 518 F.3d at 330. Marks are classified as: generic, descriptive, suggestive, or arbitrary and fanciful, with 'the strength of a mark, and its protection, increase[ing] as one moves away from generic and descriptive marks toward arbitrary marks.' *Id.* (citing *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 346 (5th Cir. 1984)). Marketplace recognition depends on advertising, length of time in business, public recognition, and uniqueness. *RE/MAX Int'l, Inc. v. Trendsetter Realty, LLC*, 655 F. Supp. 2d 679, 698-99 (S.D. Tex. 2009) (citation omitted).

*Vogue Tyre & Rubber Co. v. Rivas*, No. 3:17-cv-3198-S-BK, 2018 WL 3853712, at *3 (N.D. Tex. July 18, 2018).

Sunteck TTS has alleged that its mark is at least suggestive and that it "enjoys significant goodwill and value in Plaintiff's Marks in connection with transportation logistics service." Dkt. No. 8 at 3. The strength of the Sunteck TTS mark weighs in favor of finding a likelihood of confusion.

> (2) Similarity of design between the marks

Similarity of the marks "is determined by comparing the marks' appearance…and meaning." *Elvis Presley Enterprises,* 141 F.3d at 201. Sunteck TTS and Sunteck Transportation are similar, as they both share the Sunteck name.

And, so, Sunteck TTS's pleadings sufficiently allege that the marks are similar, and this factor weighs in favor of finding a likelihood of confusion. *See* Dkt. No. 8 at 3.

(3) Similarity of the products

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Exxon Corp. v. Texas Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980). Both Sunteck TTS and Sunteck Transportation offer transportation logistics services. *See* Dkt. No. 8 at 3. Because the services are identical, this weighs in favor of finding a likelihood of confusion.

(4) Identity of retail outlets and purchasers

Courts look to the similarities between the retail outlets and the purchasers of the products to assess likelihood of confusion. *See Vogue*, 2018 WL 3853712, at *4. Sunteck TTS has not alleged enough information about the similarity of Sunteck Transportation's purchasers and Sunteck TTS's purchasers to analyze this factor, so the undersigned finds this factor, as alleged, to be neutral. *See Sueros Y Bebidas Rehidratantes, S.A. de D.V. v. Indus Enterprises, LLC*, No. CV H-22-1304, 2023 WL 5733841, at *7 (S.D. Tex. Sept. 5, 2023) (finding the identity of purchasers factor neutral when there was not sufficient evidence to make a determination).

(5) Similarity of advertising media used

The more similar the parties' advertising is, the more likely there is a likelihood of confusion. *See Vogue*, 2018 WL 3853712, at *4. Sunteck TTS has not alleged any information about the methods or similarity of its advertising or Sunteck Transportation's advertising but rather only that Sunteck Transportation advertises to this district. *See* Dkt. No. 8 at 2. And, so, this fact, as alleged, to be neutral. *See Sueros*, 2023 WL 5733841, at *7.

(6) The defendant's intent

In analyzing a defendant's intent, courts consider whether the defendant "intended to derive benefits from [a plaintiff's] reputation by using … the mark." *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 196 (5th Cir. 2018). Absence of intent typically results in the Court finding the factor neutral. *See Future Proof Brands, L.L.C. v. Molson Coors Beverage Co.*, 982 F.3d 280, 296 (5th Cir. 2020).

While Sunteck TTS has alleged Sunteck Transportation knowingly and willfully infringed on the marks, they allege no facts to support a finding that Sunteck Transportation willfully infringed on the marks. They have provided no factual basis to conclude that Sunteck Transportation used the mark to "derive benefits from a plaintiff's reputation…." *Viacom Int'l v. IJR Cap. Invs., L.L.C.*, 891 F.3d 178, 196 (5th Cir. 2018); Dkt. No. 8 at 1. And the Fifth Circuit has held that "'mere awareness' of the senior user's mark does not 'establish[ ] … bad intent.'" *Id.* (internal citations omitted). And so, the undersigned concludes this factor is neutral.

8) Actual Confusion

Finding actual confusion is not necessary to find trademark infringement. *See Elvis Presley Enterprises*, 141 F.3d at 203. Even if a plaintiff cannot show a sale resulted because of the confusion, "infringement can be based upon confusion that creates initial consumer interest." *Id.*; *see* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:6 (5th ed.). But actual confusion "'is nevertheless the best evidence of a likelihood of confusion.'" *Elvis Presley Enterprises*, 141 F.3d at 204 (internal citations omitted).

For actual confusion, Sunteck TTS has alleged "Plaintiff was contacted by QPC Logistics on or about March 7th, 2023 with a belief that transportation service communications from Defendant originated from Plaintiff." Dkt. No. 8 at 3-4.

The United States Court of Appeals for the Fifth Circuit has held that when two people inquired whether defendant and plaintiff were affiliated, there was not actual confusion, especially considering the large number of sales by both parties. *Rex Real Est. I, L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607 (5th Cir. 2023) (*citing Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 255 (5th Cir. 1980)). Similarly, where none of the inquiries demonstrating confusion between the businesses were from potential customers, and the number of inquiries showing confusion were negligible in light of the "number of transactions" the party conducted, there was no actual confusion. *See id.* (citing *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 313 (5th Cir. 1981)).

But the Fifth Circuit has also found that when "employes have received phone calls once a month from people trying to reach defendant," there was actual confusion, even though there was no possibility that "the misdirected phone calls could divert sales from the plaintiff." *See id.* at 625-26 (citing *Armco, Inc. v. Armco Burglar Alarm Co.*, 693 F.2d 1155, 1156 (5th Cir. 1982)). And, when people inadvertently contacted the plaintiffs seeking to do business with the defendant or calling about defendant's advertisements, and people confused the companies or their locations, there was "some relevant evidence of actual confusion." *See id.* at 626-27.

Sunteck TTS's allegations of a singular customer of Sunteck Transportation confusing the two companies falls in between these two lines of precedent, particularly when there are no allegations as to Sunteck TTS's or Sunteck Transportation's sales. And so, the undersigned finds this factor slightly weighs in favor of actual confusion.

### 8) Degree of care exercised by potential purchasers

> Degree of care is determined "by looking to both the kind of goods or services offered and the kind of purchasers. 'Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion ... However, a high price tag alone does not negate other [digits of confusion], especially if the goods or marks are similar.' *Streamline*, 851 F.3d at 458 (internal quotation marks and citations omitted). '[P]rofessional and institutional" purchasers "are virtually certain to be informed, deliberative buyers.'" *Oreck Corp. v. U.S. Floor Sys.*, Inc., 803 F.2d 166, 173 (5th Cir. 1986).

*Rex Real Est.*, 80 F.4th at 627.

Sunteck TTS's allegations do not permit the Court to determine the degree of care exercised by potential purchasers. Sunteck TTS does not allege the price of its services, the price of Sunteck Transportation's services, or any other information about potential purchasers. And, so, this factor is neutral. *See Sueros*, 2023 WL 5733841, at *7.

The undersigned notes that the factual allegations here are slim, but most factors that had sufficient allegations to support an analysis weigh in favor of confusion. And, so, the undersigned concludes that Sunteck TTS has sufficiently alleged a likelihood of confusion.

Because Sunteck TTS has sufficiently alleged both likelihood of confusion and ownership in a legally protectable mark, Sundeck has sufficiently alleged federal trademark infringement.

Sunteck TTS's claim for Texas common law trademark infringement also shares the same elements as federal trademark infringement. *See Transparent Energy LLC v. Premiere Mktg. LLC*, No. 3:19-cv-3022-L, 2020 WL 4678438, at *6 (N.D. Tex. July 28, 2020) (cleaned up) ("Federal unfair competition, false designation of origin, and false association claims, as well as Texas common law trademark infringement claims, all have the same elements as trademark infringement under the Lanham Act."); *Viahart, LLC v. Chickadee Bus. Sols., LLC*, No. 6:19-CV-406-JCB, 2021 WL 6333033, at *7 (E.D. Tex. July 2, 2021) ("The same analysis for federal trademark-infringement and counterfeiting claims applies to those claims under Texas common law.").

Because Sunteck TTS has sufficiently alleged its federal trademark infringement claim, it also has sufficiently alleged its Texas common law trademark infringement claim.

B. Common Law Unfair Competition

"A trademark infringement and unfair competition action under Texas common law presents essentially 'no difference in issues than those under federal trademark infringement actions.'" *Amazing Spaces*, 608 F.3d at 235 n.7. But, "in Texas, common law unfair competition is an umbrella cause of action arising out of dishonest business conduct." *Transparent Energy*, 2020 WL 4678438, at *9.

Sunteck TTS alleges that "[d]efendant's actions are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendant with Plaintiff, or as to the origin, sponsorship or approval of Defendant's services or other commercial activities." It does not allege any claims for misappropriation or conduct that would require a different analysis than the likelihood of confusion factors. *See Mission Trading Co., Inc. v. Lewis*, No. CV H-16-3368, 2017 WL 6935824, at *5 (S.D. Tex. July 31, 2017) ("Courts have held that a showing of the likelihood of confusion for trademark infringement under federal law will also support claims for trademark infringement under Texas law, unfair competition under common law, and unfair competition and false designation of origin under 15 U.S.C. § 1125(a) of the Lanham Act."), *rep. & rec. adopted*, No. CV H-16-3368, 2017 WL 4941408 (S.D. Tex. Nov. 1, 2017); *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp.2d 532, 538-39 (S.D. Tex. 2013) ("the Court must only conduct one inquiry to determine [the defendants'] liability because, as the parties appear to agree, the facts that support an action for trademark infringement under the Lanham Act also support the other three actions" for false designation of origin under 15 U.S.C. § 1125(a), trademark infringement under Texas common law, and unfair competition under Texas common law); *Sting Soccer Grp., L.P. v. Rated Sports Grp., L.P.*, No. 3:21-cv-964-B, 2021 WL 5280972, at *6 (N.D. Tex. Nov. 12, 2021) (finding that because plaintiff adequately pled the mark was legally protectable and likely to cause confusion, plaintiff adequately stated a claim for common law trademark infringement and unfair competition).

And, so, having found that Sunteck TTS sufficiently alleged a likelihood of confusion, Sunteck TTS has adequately alleged common law unfair competition.

### C. Injury to Business Reputation or Trademark under Texas Law

Texas Business and Commerce Code § 16.103 provides that

the owner of a mark that is famous and distinctive, inherently or through acquired distinctiveness, in this state is entitled to enjoin another person's commercial use of a mark or trade name that begins after the mark has become famous if use of the mark or trade name is likely to cause the dilution of the famous mark.

First, the undersigned will address if Sunteck TTS owns a mark that is famous and distinctive. *See Hillstone Rest. Grp., Inc. v. Hillstone Mgmt., LLC*, No. 3:16-cv-2624-D, 2017 WL 495869, at *3 (N.D. Tex. Feb. 7, 2017) ("under Texas law [Section 16.103] the mark must be both distinctive and famous").

"When analyzing whether a trademark is 'famous,' a court may consider many factors including:

(1) [T]he duration, extent, and geographic reach of the advertisement and publicity of the mark in this state, regardless of whether the mark is advertised or publicized by the owner or a third party; (2) the amount, volume, and geographic extent of sales of goods or services offered under the mark in this state; (3) the extent of actual recognition of the mark in this state; and (4) whether the mark is registered in this state or in the United States Patent and Trademark Office. TEX. BUS. & COMM. § 16.103(b)."

*Mott's LLP v. Comercializadora Eloro, S.A.*, 507 F. Supp. 3d 780, 788 (W.D. Tex. 2020).

Although Sunteck TTS is registered, Sunteck TTS does not allege that its mark is famous or offer any factual allegations as to the extent the mark is well known among the general public. *See Sting Soccer Grp.*, 2021 WL 5280972, at *8 (finding

that even when plaintiff alleged its mark was famous in the North Texas soccer community it did not "plausibly assert that the general public 'throughout the state of Texas or in a geographic area in this state' would recognize the mark[.]") (internal citations omitted); *see also Springboards to Educ., Inc. v. Scholastic Book Fairs, Inc.*, No. 3:17-cv-54-B, 2018 WL 1806500, at *6 (N.D. Tex. Apr. 17, 2018) ("niche fame is just as insufficient under Texas law as under federal law[.]").

And, so, Sunteck's pleadings do not sufficiently allege a claim under Texas Business and Commerce Code § 16.103.

IV. Consideration of other factors support granting the motion on some of <u>Sunteck TTS's claims.</u>

Although default judgment is a harsh remedy, Sunteck Transportation's failure to answer Sunteck TTS's complaint supports default judgment on Sunteck TTS's claims.

There are not material issues of fact, which supports granting default judgment.

There has not been substantial prejudice against Sunteck Transportation, as it was properly served and aware of the complaint. *See* Dkt. No. 11.

There are clearly established grounds for default because Sunteck Transportation failed to answer Sunteck TTS's complaint.

And there is no indication that Sunteck Transportation's default was caused by good faith mistake or excusable neglect. And, so, the Court would not feel obligated to set aside a default on Sunteck Transportation's motion. *See Lindsey*, 161 F.3d at 893.

V.   <u>Permanent Injunction</u>

Sunteck TTS also seeks a permanent injunction against Sunteck Transportation under 15 U.S.C. § 1116(a), which allows the Court to grant a permanent injunction when there is a violation of the Lanham Act. *See Hassell Free Plumbing*, 2021 WL 1139424, at *6.

For the Court to grant a permanent injunction, Sunteck TTS must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Sunteck TTS alleges in its amended complaint that Sunteck Transportation's actions have caused irreparable harm. *See* Dkt. No. 8 at 4-5. Sunteck TTS "is entitled to a presumption that it has suffered an irreparable injury as to its trademark claims because it has shown a violation of the Lanham Act.*" Paakline, LLC v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 22-CV-1082-DII, 2023 WL 7018276, at *6 (W.D. Tex. Oct. 24, 2023) (cleaned up). And, as the United States Court of Appeals for the Fifth Circuit has explained, "[a]ll that must be proven to establish liability and the need for an injunction against infringement is the likelihood of confusion – injury is presumed." *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 627 (5th Cir. 2013) (cleaned up). And Sunteck TTS has shown a likelihood of confusion in the marks.

And, as another judge of this Court has explained, "[i]n a dispute over trademark infringement and unfair competition, 'when a likelihood of confusion exists, the plaintiff's lack of control over the quality of the defendant's goods constitutes immediate and irreparable harm.... The injury lies in the fact that the plaintiff no longer can control its own reputation and goodwill.'" *Liberty Burger Prop. Co. v. Liberty Rebellion Rest. Grp., LLC*, No. 3:22-cv-85-E, 2023 WL 349790, at *6 (N.D. Tex. Jan. 20, 2023). Because Sunteck TTS has shown a likelihood of confusion in the marks, it can no longer control the reputation of its mark, sufficiently alleging irreparable injury.

The Fifth Circuit has also cited with approval the principle that "[t]here seems little doubt that money damages are 'inadequate' to compensate [owner] for continuing acts of [infringer].' *Abraham*, 708 F.3d at 627 (cleaned up)). And monetary damages will not stop Sunteck Transportation from continuing to use the mark. *See Hassell Free Plumbing*, 2021 WL 1139424, at *6 ("Plaintiff has no other adequate remedy at law because monetary damages will not prevent future infringing activity by Defendant."). And, so, Sunteck TTS has shown that it has no adequate remedy at law.

The balance of hardships also favors Sunteck TTS. Any hardship that Sunteck Transportation suffers "by requiring them to comply with the law is outweighed by the substantial and continuing harm to Plaintiff's business." *MetroPCS v. Mohammed*, No. 3:16-cv-1946-L-BK, 2017 WL 2590108, at *7 (N.D. Tex. Apr. 24, 2017), *rep. & rec. adopted*, 2017 WL 2579040 (N.D. Tex. June 14, 2017).

And the public interest supports entering an injunction "because it advances the purposes of the Lanham Act." *S & H Indus., Inc. v. Selander*, 932 F. Supp. 2d 754, 765 (N.D. Tex. 2013).

And, so, the undersigned recommends entering a permanent injunction against Sunteck Transportation to keep them from using the mark.

VI.  Attorneys' Fees, Costs, and Damages

   A.  Attorneys' Fees

The Court may award attorneys' fees in exceptional cases under the Lanham Acr. *See* 15 U.S.C. § 1117(a). "An exceptional case is one in which the defendant's infringement is 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-cv-2607-M, 2016 WL 1059536, at *5 (N.D. Tex. Mar. 17, 2016) (internal citations omitted). Cases are also exceptional when "'the substantive strength of a party's litigating position' is notable or a party unreasonably litigates the case." *Viahart*, 2021 WL 6333033, at *17 (cleaned up). Courts can find a party's conduct willful by "virtue of default." *Real Est. Edge, LLC v. Campbell*, No. 1:17-CV-1093-RP, 2019 WL 830966, at *6 (W.D. Tex. Feb. 21, 2019) ("[Defendant's] infringement of [Plaintiff's] mark can be characterized as deliberate or willful because, by virtue of his default, he is deemed to have admitted to knowingly and intentionally infringing [Plaintiff's] trademark.").

And "'[i]gnoring a cease-and-desist letter may constitute 'willful and deliberate' conduct.'" *S & H Indus.*, 932 F. Supp. 2d at 767 (internal citations omitted).

Here, Sunteck TTS sent Sunteck Transportation a cease-and-desist letter, but Sunteck Transportation continued using the mark. *See* Dkt. No. 8 at 1. And, so, Sunteck TTS has shown this is an exceptional case and is entitled to reasonable attorneys' fees.

This Court uses the 'lodestar' method to calculate attorneys' fees." *Heidtman v. Cty. Of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). The lodestar is calculated by multiplying the number of hours that an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *See Smith v. Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The parties seeking reimbursement of attorneys' fees bear the burden of establishing the number of hours expended through the presentation of adequately recorded time records as evidence. *See Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The Court should use this time as a benchmark and then exclude any time that is excessive, duplicative, unnecessary, or inadequately documented. *See id.* The hours remaining are those reasonably expended.

There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010). But, "after calculating the lodestar, a district court may enhance or decrease the amount of attorney's fees based on the relative weights of the twelve factors set forth in [*Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d 714 (5th Cir. 1974)]." *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). Because the lodestar is presumed to be reasonable, it should be modified only in exceptional cases. *See Watkins*, 7 F.3d at 457.

While Sunteck has presented a calculation of hours and a declaration the reasonableness of the fees, it has not provided any records showing how the hours were spent preparing for litigation. *See* Dkt. No. 12 at 6. Without this information, the Court cannot determine whether the hours reflect "time 'reasonably expended on the litigation.'" *Watkins* 7 F.3d at 458 (internal citations omitted).

And, so, the undersigned recommends that the Court require Sunteck TTS to submit more detailed records of the time spent on this suit before entering a finding of attorneys' fees.

### B. Costs

Sunteck TTS states that it seeks to recover all costs allowable under 15 U.S.C. § 1117. The only costs that Sunteck TTS alleges are $573.50 in service of process fees.

"Plaintiffs are entitled to recover 'costs of the action;' under the Lanham Act. 15. U.S.C. § 1117(a)." *Roor Int'l BV v. AKS1 Enter., Inc.*, No. CV H-18-3835, 2019 WL 3500911, at *4 (S.D. Tex. Aug. 1, 2019). And judges of this Court have awarded service of process fees in costs of action under similar circumstances. *See US Green Bldg. Council, Inc. v. Wardell*, No. 3:14-cv-1541-M-BH, 2016 WL 3752964, at *9 (N.D. Tex. June 17, 2016) (cleaned up).

The undersigned recommends that costs of court be awarded to Sunteck TTS, and that Sunteck TTS submit proof of costs in its filing for attorneys' fees.

### C. Damages

Sunteck TTS requests to "recover all damages, actual or otherwise, including profits, as a result of the infringement and wrongful conduct of Defendant." Dkt. No. 12 at 8.

Sunteck TTS requests that the Court hold a hearing to determine the appropriate amount of damages. *See* Dkt. No. 12 at 6.

"A defendant's default concedes the truth of the allegations of the complaint concerning the defendant's liability, but not damages. Ordinarily, damages will not be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts." *BVE Brands, LLC v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 1-22-CV-278-RP, 2023 WL 5108960, at *4 (W.D. Tex. June 23, 2023) (internal citations omitted) (cleaned up).

The Lanham Act directs the Court to award damages in the form of "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. §1117(a).

Sunteck TTS has not provided any information that would allow the undersigned to calculate damages under the Lanham Act. And, so, the undersigned recommends that the Court, if it accepts the recommendation to grant the motion for default judgment, re-refer this matter to the undersigned hold a hearing to determine the appropriate amount of damages and then make a recommendation to the Court as to damages and, based on Sunteck TTS's supplemental submissions, attorneys' fees and costs.

## Conclusion

The undersigned recommends the Court grant in part and deny in part Sunteck TTS's motion for default judgment. The undersigned recommends that the Court grant default judgment as to the claims for federal trademark infringement, common law trademark infringement, and common law unfair competition, and deny default judgment as to the claim for injury to business reputation or trademark. And the undersigned recommends that the Court grant the permanent injunction and re-refer this matter to the undersigned hold a hearing to determine the appropriate amount of damages and then make a recommendation to the Court as to damages and, based on Sunteck TTS's supplemental submissions, attorneys' fees and costs.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: January 22, 2024

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE